# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

TANDA VAUGHN,

              Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

              Defendant.

Case No. 3:08-cv-377

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on April 23, 2003, alleging disability since October 19, 2001, due to several physical injuries, bipolar disorder, alcoholism, and post-traumatic stress disorder (PTSD). *See* Tr. 89-91;107. Plaintiff's application was denied initially and on reconsideration. *See* Tr. 42–51. Two hearings were held before Administrative Law Judge Daniel R. Shell, (Tr. 882-910; 911-33), who determined that Plaintiff was not disabled. (Tr. 19-32). The Appeals Council denied Plaintiff's request for review, (Tr. 7-10), and Judge Shell's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Shell found that she met the insured status requirements of the Act through December, 2006. (Tr. 31, finding 1). Judge Shell also found that Plaintiff has severe chronic cervical and lumbosacral sprain/strain, degenerative disk

disease of the cervical and lumbosacral spines, bipolar disorder, PTSD, anxiety disorder, and a strong history of polysubstance abuse, but that she does not have an impairment or combination of impairments that meets or equals the Listings. *Id.*, finding 3. Judge Shell found further that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.*, finding 4. Judge Shell then used section 202.21of the Grid as a framework for deciding, coupled with a vocational expert's testimony, and found there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr., 32` findings 11 and 12). Judge Shell concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. *Id.*, finding 13.

In her Statement of Errors, Plaintiff does not challenge the Commissioner's findings with respect to her alleged exertional impairments. (Doc. 11). Accordingly, the Court will focus its review of the medical evidence on Plaintiff's alleged mental impairments.

The record contains treatment notes from South Community, Inc., dated April, 1996, through July, 1998, which reveal that Plaintiff received treatment at that facility for anxiety and alcohol abuse. (Tr. 165-97).

The record contains a copy of Plaintiff's treatment notes from The Community Network (TCN) dated March 19, 2003, through January 16, 2004. (Tr. 310-56). At the time of Plaintiff's initial evaluation, it was noted that Plaintiff had a history of alcohol and drug abuse, that her mental state was unremarkable, and that her diagnoses were alcohol dependence, cannabis dependence, recurrent major depressive disorder, generalized anxiety disorder, and rule out PTSD; she was assigned a GAF of 52. *Id.* Subsequently, Plaintiff's mental health care providers included bipolar disorder in Plaintiff's identified diagnoses. *Id.*

4

Examining psychologist Dr. Schulz reported in July, 2003, that Plaintiff stated that she was unable to work due to her back impairment, previous alcohol and drug addiction, PTSD, and manic depression and that she "has been off everything for 42 days." (Tr. 262-69). Dr. Schulz also reported that Plaintiff completed high school and earned a certificate in computer science, that she was able to feed, bathe, and dress herself, and take care of her personal hygiene, that a typical day consisted of making coffee in the morning, cleaning the kitchen, doing her morning devotions, occasionally changing her clothes, going to the tanning bed, reading, running errands, walking, and attending AA meetings. *Id.* Dr. Schulz noted that Plaintiff had a driver's license, attended church with her children on Sundays, visited her father twice a year, and spoke with her sister on the telephone twice a month. *Id.* Dr. Schulz also noted that Plaintiff's speech was clear and understandable, she denied hallucinatory or psychotic involvement, phobias, and obsessive thoughts, her affect was appropriate and congruent; her mood was euthymic, she denied any suicidal or homicidal ideations, and that she indicated that, over the past week, she felt anxious, depressed, and hopeless. *Id.* Dr. Schulz noted further that Plaintiff's long-term memory was within the adequate range and that her ability to abstract was in the low average range. *Id.* Dr. Schulz identified Plaintiff's diagnoses as bipolar disorder, anxiety disorder, personality disorder, and polysubstance dependence in remission; he assigned her a GAF of 55. *Id.* Dr. Schulz opined that Plaintiff was minimally impaired in her abilities to relate to others, to understand, remember, and follow instructions, and maintain attention and concentration to perform simple, repetitive tasks. *Id.* Dr. Schulz also opined that Plaintiff was moderately impaired in her ability to withstand the stress and pressure of day-to-day work activity. *Id.*

Examining psychiatrist Dr. Moon reported on December 29, 2003, that Plaintiff drove

herself to the examination, completed her own paperwork, although it took her an extended period of time, was cooperative during the examination, that her mood was somewhat manic, her affect was depressed and blunted, and that her speech and thought processes were coherent, relevant, and goal directed. (Tr. 300-09). Dr. Moon also reported that Plaintiff appeared to be of average intelligence, that her recent and remote memories were intact and her delayed memory was impaired, and that her fund of general knowledge was impaired. *Id.* Dr. Moon identified Plaintiff's diagnoses as bipolar disorder, panic disorder with agoraphobia, PTSD, and alcohol and cannabis abuse in full remission; he assigned Plaintiff a GAF of 45. *Id.* Dr. Moon recommended that Plaintiff see a psychiatrist for evaluation of her current medication and medication management. *Id.*

The record contains additional records from TCN Behavioral Health. (Tr. 659-713; 730-66). Those records reveal that Plaintiff continued to receive mental health treatment during the period January 20, 2004, through August 22, 2005. *Id.*

Plaintiff was admitted to the hospital on July 29, 2004, for vague symptoms of depression, suicidal ideations, and alcohol abuse. (Tr. 610-28). At that time, it was noted that Plaintiff demanded medications which the psychiatrist thought were inappropriate and that she requested narcotic pain medication. *Id.* During that hospitalization, Plaintiff did not exhibit any psychotic symptoms, was not aggressive, and did not have any suicidal or homicidal ideations, and at her request, she was discharged. *Id.*

On September 18, 2004, Plaintiff was admitted to the hospital following an overdose of Flexeril, Neurontin and Sonata. (Tr. 629-44). At the time of her admission, it was noted that Plaintiff was suicidal, depressed, dysphoric, tearful, and fatigued. *Id.* Plaintiff was treated with medications and therapy and subsequently, Plaintiff indicated that she "felt the best on these

6

medications that she had felt in quite a long period of time." *Id.* Plaintiff was discharged at which time it was noted that her mood was good, she was no longer having suicidal ideation, and that she seemed motivated to pursue out patient treatment. *Id.*

The record contains treatment notes from Dr. Moon dated November 30, 2004, through August 22, 2005. (Tr. 730-65). When he initially evaluated Plaintiff, Dr. Moon reported that Plaintiff was cooperative, but appeared somewhat agitated, her mood was manic and hyper, her speech was coherent and goal directed, and she that reported no delusional type thinking or hallucinations. *Id.* Dr. Moon also reported that Plaintiff was oriented, her recent and remote memories were intact, her delayed memory was impaired and that she could not recall any of three objects after five minutes. *Id.* Dr. Moon identified Plaintiff's diagnoses as bipolar I disorder, severe, most recent episode manic, PTSD, and generalized anxiety disorder. *Id.* Dr. Moon assigned Plaintiff's GAF of 50. *Id.* The records from Dr. Moon's office revealed that Plaintiff received counseling from a therapist in his office and that Dr. Moon followed her for medication evaluation. *Id.*

Examining psychologist Dr. Schulz reported on August 24, 2005, that Plaintiff's speech was clear and understandable, her affect was appropriate and congruent, she denied any suicidal or homicidal ideations, and that she was alert and responsive. (Tr. 587-93). Dr. Schulz also reported that Plaintiff's insight and judgment were intact, and that testing revealed a verbal I.Q. of 90, a performance I.Q. of 79, and a full scale I.Q. of 84. *Id.* Dr. Schulz identified Plaintiff's diagnoses as bipolar disorder, anxiety disorder, alcohol abuse in remission, and borderline intellectual functioning; he assigned Plaintiff a GAF of 54. *Id.* Dr. Schulz opined that Plaintiff was mildly impaired in her ability to relate to other people, including coworkers and supervisors, was

mildly-to-moderately impaired in her ability to maintain attention and concentration, and to perform simple, repetitive tasks, and that she was moderately impaired in her ability to understand, remember, and follow instructions and withstand stress and pressure of day-to-day work activity. *Id.*

On October 27, 2005, Dr. Schulz reported that Plaintiff had moderate limitations in her ability to understand and remember and carry out short, simple instructions; understand and remember detailed instructions; carry out detailed instructions; make adjustments on simple work-related decisions; respond appropriately to work pressures in a usual work setting; and respond appropriately to changes in a routine work setting. (Tr. 594-96). Dr. Schulz further reported that Plaintiff had slight limitation in interacting appropriately with the public, supervisors, and coworkers. *Id.*

Plaintiff continued to participate in therapy at Dr. Moon's office during the period September 6, 2005, to June 5, 2006. (Tr. 766-71; 801-17; 832-95). On September 8, 2005, Dr. Moon reported that he was treating Plaintiff for PTSD related to an assault at work, an anxiety disorder, and bipolar disorder and that she was unable to perform most work-related mental activities. *Id.*

At the administrative hearing in May, 2006, the medical adviser (MA) engaged in a lengthy description of the record. (Tr. 889-907). The MA testified that based on the mental health records, Plaintiff did not meet a listed impairment. *Id.* The MA opined that Plaintiff had stress-related restrictions including dealing with the public, production quotas, and contact with coworkers. *Id.* The MA further testified that Plaintiff could perform work without strict time standards and if she had limited, occasional contact with coworkers. *Id.* The MA also testified that Plaintiff could perform complex tasks. *Id.* The MA testified that the records from Dr. Moon

8

revealed some improvement when she was active with AA and in treatment and that in 2005, when she did not attend AA consistently, she had an increase in her physical complaints and she became more agitated, depressed, and stressed. *Id.*

On June 26, 2006, examining psychologist Dr. Scott noted that Plaintiff complained that she was unable to control her life unless she was in her home, reported difficulty getting to sleep due to her pain, feeling depressed, and that she reported experiencing very low energy. (Tr. 846-54). Dr. Scott also noted that Plaintiff was well-oriented but her recollection of the current date was off by two days, she had poor eye contact, her mood was sad and her affect was tense, her immediate memory and delayed memory were poor, and that her concentration was fair. *Id.* Dr. Scott identified Plaintiff's diagnoses as PTSD, bipolar disorder, and generalized anxiety disorder. *Id.* Dr. Scott opined that Plaintiff was unable to work at that time due to her psychological condition, that she would be unable to tolerate the day in and day out stress of working with coworkers and supervisors, and that she would not be able to tolerate the work demands of a forty hour week. *Id.*

On August 15, 2006, Dr. Moon reported to the Bureau of Workers' Compensation that Plaintiff's progress had been slow, "as she has avoided talking about the attack due to the intense emotional feelings that it brings out." (Tr. 855-57). Dr. Moon further noted that as Plaintiff began addressing issues surrounding the attack, her anxiety and depression increased. *Id.* Dr. Moon also noted that Plaintiff's avoidant behaviors had interfered with her emotional recovery and healing, and that her lack of trust in other people as a result of her PTSD might make it difficult "for her to be completely open and honest" when being examined by someone she did not know. *Id.* Dr. Moon reported that Plaintiff's medications had required frequent adjustments and that persons with bipolar

9

disorder sometimes have problems with compliance due to their disease process, as was the case for Plaintiff. *Id.* Dr. Moon concluded that Plaintiff had a complex condition with Bipolar Disorder, PTSD, and generalized anxiety disorder along with chronic pain, which made her treatment difficult and complicated and required a long time to stabilize. *Id.* Dr. Moon opined that Plaintiff had not reached medical maximum improvement and he stated that he agreed with Dr. Scott that Plaintiff was not able to return to her previous position of employment nor was she able to work at this time. *Id.*

The record contains additional medical evidence including records from Dr. Moon and Ms. Berlin. (Tr. 863-81). That evidence was not before Judge Shell. Rather, Plaintiff submitted it to the Appeals Council. However, since the Appeals Council denied Plaintiff's request for review, that evidence is not a part of the record for purposes of substantial evidence review of Judge Shell's decision. *Cline v. Commissioner of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996) (citation omitted).

Plaintiff alleges in her Statement of Errors that the Commissioner erred in his evaluation of the opinion from her treating psychiatrist, Dr. Moon. (Doc. 11).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings

> alone of from reports of individual examinations, such as consultative
> examinations or brief hospitalizations.

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.* On the other hand, a Social Security Ruling[1] explains that "[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record." *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Blakley, supra, citing, Wilson, supra.* and 20 C.F.R. § 404.1527(d)(2).

Closely associated with the treating physician rule, the regulations require the ALJ to "always give good reasons in [the] notice of determination or decision for the weight" given to the claimant's treating source's opinion. *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R.

---

[1] Of course, although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

11

§404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Blakley,* 581 F.3d at 406-07, *citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.

*Blakely,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record." *Blakely, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Moon's opinion, the Commissioner essentially determined that it was not supported by his treatment notes and contrary to the overall weight of the evidence. (Tr. 27).

As noted above, Dr. Moon has been Plaintiff's long-term treating psychiatrist, along with Ms. Berlin, the therapist in his office. Plaintiff saw either Dr. Moon or Ms. Berlin an average of three times a month. *See* Tr. 730-65, 801-15, 832-45. Dr. Moon has essentially opined that

Plaintiff is disabled, and his opinion is consistent with the record.

For example, examining psychologist Dr. Scott concluded that Plaintiff could not work, given her emotional lability. Dr. Scott concluded "She is a difficult claimant to treat and she would not be able to tolerate the day in and day out stress of working with coworkers and supervisors. Moreover, she would not be able to tolerate the work demands of a 40 hour week." (Tr. 846-54).

Judge Shell also emphasized, as does the Commissioner, that Plaintiff was non compliant with both medications and treatment. In this manner, Judge Shell equates the gaps in treatment either to improvement in Plaintiff's symptoms or to the non-restricting impact these impairments have on her work life, without relying on substantial supporting evidence. "ALJs must be careful not to assume that a patient's failure to receive mental-health treatment evinces a tranquil mental state. For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself." *White v. Commissioner of Social Sec.*, 572 F.3d 272, 283 (6th Cir. 2009), citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)(it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation).

The only opinions which arguably contradict Dr. Moon's opinion are the opinions of the non-treating examining psychologist and the MA. Under the facts of this case, the Commissioner erred by rejecting the opinions of Plaintiff's treating psychiatrist and by relying, instead, on the opinions of the examining psychologist and the MA. Therefore, the Commissioner's decision is not supported by substantial evidence on the record as a whole.

If the Commissioner's decision is not supported by substantial evidence, the Court

must decide whether to remand the matter for rehearing or to reverse and order benefits granted. The Court has the authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. §405(g). If a court determines that substantial evidence does not support the Commissioner's decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 176 (6th Cir. 1994) (citations omitted); *see also, Newkirk v. Shalala,* 25 F.3d 316 (6th Cir. 1994).

This Court concludes that all of the factual issues have been resolved and that the record adequately establishes Plaintiff's entitlement to benefits. Specifically, as noted above, Dr. Moon has been Plaintiff's long-term treating psychiatrist and he has essentially opined that Plaintiff is not capable of performing substantial gainful activity, and his opinion is supported by the objective medical evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled and therefore not entitled to benefits under the Act be reversed. It is further recommended that this matter be remanded to the Commissioner for the payment of benefits consistent with the Act.

December 18, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).